## A10A1116. LUKE v. THE STATE.
(703 SE2d 335)

ADAMS, Judge.

Orlando Valentino Luke was convicted in 1994 of speeding, driving on the wrong side of the road, reckless driving, cocaine possession, possession of a firearm by a convicted felon, possession of a firearm during the commission of a crime, driving under the influence, aggravated assault and two counts of simple assault. In this out-of-time appeal, Luke states that he is appealing from the sentences, convictions and denial of his motion for new trial.

This is the second appearance of this case before this Court. Luke filed an earlier appeal after the trial court entered an order in March 2009 ostensibly denying a motion for new trial dated April 22, 1994. But no such motion appeared in the appellate record; rather, the only motion for new trial in the record was dated January 12, 2009, almost 15 years after Luke's conviction. This Court determined that it lacked jurisdiction over the appeal because the January 2009 motion for new trial was untimely and therefore void. See *Wright v. Rhodes*, 198 Ga. App. 269 (401 SE2d 35) (1990); OCGA § 5-5-40 (a). Accordingly, the Court dismissed the appeal. Luke subsequently moved the trial court

for an out-of-time appeal, which the trial court granted.[1]

Luke's sole argument on appeal is that the trial court erred in failing to charge the jury sua sponte on his "sole defense" of justification and that this error requires the reversal of his convictions for possession of a firearm during the commission of a crime, speeding, driving on the wrong side of the road, reckless driving and possession of a firearm by a convicted felon.[2] We disagree.

The evidence at trial showed that in the early morning hours of May 23, 1993, a Georgia state trooper attempted a traffic stop of Luke's car after radar indicated that he was traveling at 97 miles per hour. Luke did not stop, however, and the ensuing chase continued for fifty miles, across county lines, with as many as ten to fourteen law enforcement vehicles, lights flashing and sirens blaring, in pursuit. During the chase, Luke evaded several attempts to stop him (including a rolling roadblock), reached speeds of up to 120 miles per hour and forced other motorists off the road. At one point, he drove on the wrong side of a four-lane highway for some distance. The chase finally came to a stop when Luke's car ran out of gas.

After Luke's car stopped, he barricaded himself inside his vehicle, smoked crack and pointed a handgun at his own head, which kept the police at bay. For four hours, Luke refused to surrender. The stand-off ended when police rushed the car after Luke put his gun on the floorboard. During the ensuing scuffle, Luke shot a state trooper and also shot himself in the leg.

Luke testified that prior to the police chase, he was in Augusta, Georgia and men with Uzis were following him. He thought the men were after him because he had previously taken $32,000 from Atlanta drug dealers, and kept $5,000 to $6,000 for himself. Luke said he had informed the Richmond County Sheriff's Office about the men with Uzis, but they did not help him. Someone affiliated with the drug dealers told Luke that they were out to get him and his family. As he moved around Augusta, he believed that he was being followed, and he was afraid. Luke acknowledged that he was "high on crack" that day. At some point, someone gave him a gun; he took it, despite being a convicted felon, so he could protect himself. He later borrowed a car and left Augusta.

---

[1] Although the parties indicate that a copy of Luke's timely filed motion for new trial from April 1994 has been located, no such motion appears in the appellate record in either appeal and thus no record support exists to substantiate this Court's jurisdiction over a direct appeal from the trial court's March 2009 order.

[2] In his initial brief, Luke also sought reversal of the aggravated assault charge as well, but Luke's counsel later determined "upon reflection, . . . that the Aggravated Assault Count is not supported by the defense of justification" because "[t]here was no evidence presented at trial that [Luke] believed that he was being pursued by murderers when the Aggravated Assault occurred."

Luke said he "just took off" because he thought that as long as he was living, his family was in danger. He decided to "take myself out in order for my family to go on." At one point after he left Augusta, he thought he saw "cars in the background" that were following him; he used crack cocaine and kept driving. His intention was to escape the drug dealers. He did not "pay any attention" to the police cars who were pursuing him; he was "just running." He never saw the blue lights of the first trooper who began following him, and he acknowledged that the crack use may have contributed to that. At one point, after at least five police cars began following him, Luke recalled seeing bright lights, but he did not stop because he "wasn't even thinking about stopping." He was scared of the people he thought were following him and also afraid of the police because he believed they might have been hired to kill him by a group from Atlanta called "Hit for Hire." He explained that "[a]t that time, my mind was totally diluted," and he was depressed and confused. Luke also recalled seeing a police car at one point and driving around it. When asked why, he replied, "Your guess is as good as mine." Luke stopped when his car ran out of gas; he planned to shoot himself, but he did not have the nerve. He used more crack at this point because he thought it would give him the nerve to kill himself.

Luke explained that while he knew he was speeding that night, he had no intention of running anyone off the road, and he was not trying to hurt anyone. He said if he wanted to hurt someone, he had plenty of chances to do so, but he did not intentionally hurt anyone. He did not mean to shoot the state trooper; it was an accident.

Luke argues that the evidence "was clear that [Luke's] sole defense to most counts of conviction was that [Luke] was fleeing from Augusta, Georgia, in an attempt to escape the immediate threat of would-be assassins armed with Uzis." "A trial court must charge the jury on a defendant's sole defense, even without a written request, if the circumstances support the charge." (Punctuation and footnote omitted.) *Scott v. State*, 281 Ga. App. 813, 815-816 (4) (637 SE2d 751) (2006).

But Luke's trial attorney raised a number of defenses at trial. He argued in closing that the State failed to prove that the crimes occurred in Bulloch County where Luke was being tried, that Luke lacked the intent to hurt anyone or to commit any crime, and that the shooting of the trooper was an accident. Thus, justification was not his sole defense and, in fact, may have contradicted his other defenses. For example, "the defense of justification involves an intentional act and accident does not[;] both defenses are not generally involved in a single case." *Hill v. State*, 300 Ga. App. 210, 212 (1) (684 SE2d 356) (2009). Similarly, his argument that he did not intend to commit any crime could be contradicted by a defense

that he acted intentionally but was justified in doing so. While a defendant may choose to pursue alternative defense theories,[3] the trial court had no obligation to charge the jury sua sponte on all possible theories of defense.

Moreover, Luke makes no attempt to argue how his subjective, drug-influenced belief that he was being pursued across the state by unidentified men with Uzis supports the application of a justification defense under Georgia law. OCGA § 16-3-20. Justification is a defense to the prosecution "for any crime," and the defense can be asserted:

> (1) [w]hen the person's conduct is justified under Code Section 16-3-21 [use of force in self-defense], 16-3-23 [use of force in defense of habitation], 16-3-24 [use of force in defense of other property], 16-3-25 [entrapment], or 16-3-26 [coercion]; (2) [w]hen the person's conduct is in reasonable fulfillment of his duties as a government officer or employee; (3) [w]hen the person's conduct is the reasonable discipline of a minor by his parent or a person in loco parentis; (4) [w]hen the person's conduct is reasonable and is performed in the course of making a lawful arrest; (5) [w]hen the person's conduct is justified for any other reason under the laws of this state; or (6) [i]n all other instances which stand upon the same footing of reason and justice as those enumerated in this article.

OCGA § 16-3-20.

While the facts of this case do not fit neatly into any of these categories, Luke's legal argument is similar to that of a defendant accused of a crime involving physical force, who claims the use of force was justified as self-defense. Luke asserts that his fear justified speeding, erratic driving and possessing a gun in violation of the law. But in a case of physical force, the defense of justification requires proof of a *reasonable* fear, and that fear must relate to the victim, not to unknown third parties:

> When assessing claims of justification, the subjective fears of a particular defendant are irrelevant. . . . No precedent exists that would allow appellant to support his justification defense with an explanation that he had been the victim of an earlier attack committed by an unknown person. Such evidence is simply not relevant to whether the circum-

---

[3] See *Hill v. State*, 300 Ga. App. at 212 (1).

stances surrounding the commission of the crime for which appellant was being tried would have excited the fears of an objective reasonable person to the point where the use of self-defense was justified.

(Footnote omitted.) *Lewis v. State*, 270 Ga. 891, 893 (2) (515 SE2d 382) (1999) (holding that evidence of attack by third parties not admissible). Cf. *Perry v. State*, 104 Ga. App. 383, 384 (121 SE2d 692) (1961) (unreasonable or delusory fear not sufficient to constitute justification, although it "may negative the idea of malicious and intentional wrongdoing") (decided under prior version of Georgia law on justification and self-defense).

Similarly, the proper test under Luke's theory of defense is whether the existing situation would have excited the fears of an objective, reasonable person to the point that violating the law was justified.[4] Luke's subjective beliefs about unknown men with Uzis from an earlier incident does not meet this test. Contrary to Luke's argument, there was no immediate threat of would-be assassins at the time of the crimes charged, only a pursuit by law enforcement vehicles, with lights flashing and sirens blaring. Under these circumstances, his fear based upon an earlier encounter with unidentified men could not provide justification for the crimes in the indictment; thus, the circumstances did not support a charge on justification.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 3, 2010.

*Brian Steel*, for appellant.
*Richard A. Mallard, District Attorney, Keith A. McIntyre, Assistant District Attorney*, for appellee.

---

[4] See OCGA § 16-3-20 (6) (justification defense applies in instances "which stand upon the same footing of reason and justice as those enumerated in this article").